**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

A.L., *a minor student, by* L.L.*, as Parent          )
and Next of Friend*, *and each individually*,          )
                                                                                )
                              Plaintiffs,                                 )
                                                                                )          Case No. 10 C 494
                    v.                                                        )
                                                                                )
CHICAGO PUBLIC SCHOOL DISTRICT          )
NO. 299,                                                                  )
                              Defendant.                              )


**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

On January 25, 2010, Plaintiffs A.L., a minor student, by L.L., as Parent and Next of

Friend, and each individually (collectively, "Plaintiffs"), filed the present action against

Defendant Chicago Public School District No. 299 (the "District"), and others, for deprivation of

their federal and constitutional rights, *see* 42 U.S.C. § 1983, and violations of the Individuals

with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.*  Plaintiffs also seek

attorney's fees and costs pursuant to the IDEA, 20 U.S.C. § 1415(i)(3).  Before the Court are the

parties' cross-motions for summary judgment.

For the following reasons, the Court grants Defendant's motion, and denies Plaintiffs'

motion, for summary judgement on Plaintiffs' § 1983 and IDEA claims.[1]

---

[1]The Court addressed Plaintiffs' request for attorney's fees under the IDEA in a separate
order.  (R. 132.)

# BACKGROUND[2]

This action arises out of Plaintiffs' attempt to enforce their right to a "free appropriate public education," or "FAPE," for A.L., a student with disabilities. (R. 56, Am. Compl. ¶ 21.) During the 2007-08 school year, A.L. was a freshman at Dunbar Academy High School in Chicago, Illinois. (R. 84, Def.'s Local Rule 56.1 Stmnt of Undisputed Material Facts ("Def.'s 56.1 Stmnt") ¶ 2.) Prior to that time, A.L. "had received special education services in a self-contained classroom pursuant to an Individualized Educational Plan ("IEP") that classified A.L. as having a "mild cognitive impairment.'" (*Id.* ¶ 5.)

At Dunbar Academy, an "IEP Team" initially placed A.L. in special educational classes for certain core curriculum courses. (R. 56, Am. Compl., Ex. A, 9/24/08 Dec. and Order of the Impartial Hearing Officer ("Hr'g Officer Dec.") at 5.) But following a triennial evaluation that occurred during her freshman year, the IEP Team "recommended that A.L.'s eligibility classification be changed from mild cognitive impairment to moderate cognitive impairment, and

[2]The facts set forth in this section are undisputed unless otherwise noted. Many of the facts come from the parties' filings pursuant to Local Rule 56.1, which requires that the moving party file a "statement of undisputed material facts," with a response to follow. *See Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011). Both parties have made the required filings, but the Court observes that large portions of their filings, particularly Plaintiffs', fail to conform to the Local Rule. Specifically, many of the paragraphs in Plaintiffs' Rule 56.1 Statement contain blanket citations to the record without adequate explanation or specificity (*see, e.g.,* Pls.' 56.1 Stmnt ¶¶ 6(1)-(13), 66, 72, 74-75), or contain compound factual allegations in the same paragraph (*see, e.g., id.* ¶¶ 49, 52, 65, 70, 72). Additionally, many of Plaintiffs' responses to Defendant's Local Rule 56.1 Statement fail to admit or deny Defendant's factual assertions, or are otherwise non-responsive. (*See, e.g.,* Pls.' Resp. to Def.'s 56.1 Stmnt ¶ 17 (non-responsive; "Plaintiffs agree that the above-stated facts were cited in the [Hearing Officer's] decision").) Plaintiffs also filed a self-described "New Statement of Material Facts in Support of Their Response to Defendant's Motion for Summary Judgment" (R. 125-2), although the Local Rule does not provide for any filing of this type.

that her placement also be changed to a more restrictive self-contained class for moderately impaired students." (Def.'s 56.1 Stmnt ¶ 6.) A.L.'s Parent disagreed with these recommendations, and prepared a written dissent to the IEP Team recommendation. (*Id.* ¶ 7.)

On February 1, 2008, A.L.'s Parent formally requested an independent educational evaluation, or "IEE," of A.L., including a Neuropsychological Evaluation, a Speech and Language ("SL") Assessment, a Functional Vocational ("FV") Assessment, and an Assistive Technology ("AT") Evaluation. (*Id.* ¶¶ 7-8.) The District did not respond to the IEE requests "either by agreeing to fund the evaluations, or by filing a due process complaint." (R. 94, Pls.' Local Rule 56.1 Stmnt of Undisputed Material Facts ("Pls.' 56.1 Stmnt") ¶ 7.) The following week, on February 8, 2008, A.L.'s Parent filed a due process complaint against the District, seeking a finding that:

> [1] the District did not comply with the stay-put requirement imposed for AL; [2] the District violated and continues to violate the procedural rights of AL and her parent by denying them participation in the formulation of FAPE; [3] the District denied and continues to deny AL a [FAPE] and her entitled educational opportunities including extended year services; [4] the District's IEPs were inappropriate and continue to be as to their lack of specially designed instruction responsive to the Student's unique needs & inappropriate as to their lack of related services required for the Student to benefit from her special education[.]

(Hr'g Officer Dec. at 4-5.) Additionally, A.L.'s Parent sought an order that the District:

> [1] provide AL with a FAPE as documented in an appropriate IEP that is reasonably calculated to confer an educational benefit as soon as allowed by law; [2] provide Speech & Language and other appropriate related services for AL to address her speech and language, auditory processing deficits and other deficits so that AL will benefit from her education; [3] undertake the appropriate assistive technology for AL in order for AL to benefit from her education; [4] [pay] compensation for outside evaluations paid for by AL's family; [5] adopt an appropriate transition plan with services to meet the needs of AL in accordance with the functional vocational evaluations conducted; [6] provide an appropriate placement for AL and to provide transportation to and from the placement; [7] [provide] compensatory education to make AL whole for the period of

deprivation of educational opportunity, and for the lack of specially designed
instruction, at an appropriate educational facility selected by the Parent at times of
their own choosing and convenience; [8] pay for reasonable transportation costs
to and from these providers to obtain such compensatory education; and [9]
provide monthly reports on implementation of the order for 12 months to the
Parent, her counsel and [the Illinois State Board of Education ("ISBE")].

(*Id.*)

The parties participated in a resolution conference on April 11, 2008, resolving "some, but not all, of the issues in dispute." (Def.'s 56.1 Stmnt ¶ 11.) In addition to agreeing on placement, the District agreed to conduct an SL Assessment and an AT Evaluation for A.L. (*Id.*) Thereafter, on April 29, 2008, the Hearing Officer ordered the parties to convene an IEP meeting, and scheduled a pre-hearing conference. (*Id.* ¶ 12.)

On May 20, 2008, upon the Parent's motion, the Hearing Officer ordered an IEE and classroom observation (*id.* ¶ 13), and thereafter granted the Parent's request for a continuance "to allow the evaluations to be completed and to allow the parties an opportunity to consider the results." (Hr'g Officer Dec. at 2.) The parties met for an IEP meeting on December 11, 2008, but jointly requested an adjournment to allow additional IEEs. (*Id.*)

On January 19, 2009, the Parent filed another motion for an IEE, specifically an FV Assessment and an AT Evaluation. (*Id.*) At that time, the District represented that it was "ready and able" to complete both evaluations, and the Hearing Officer ordered the District to do so. (*Id.*) The District completed the AT Evaluation, but not the FV Assessment. In the interim, the Parent informed the Hearing Officer that they had "separately arranged an independent" vocational evaluation, which was "nearly complete." (*Id.*)

With most of the evaluations completed, the Hearing Officer conducted a four-day administrative hearing on July 21-23, 2009, and September 14, 2009. (Def.'s 56.1 Stmnt ¶ 17.)

The numerous witnesses who testified at the hearing included: L.L., the mother of A.L.; Ms. Mangrum, a teacher at Dunbar Academy; Ms. Chambers, A.L.'s case manager; Ms. Baker, Mr. Taylor, Mr. Purvis, and Ms. Rodriguez, all of whom were A.L.'s teachers; Ms. Janet Hack, a school psychologist who performed the psychological evaluation of A.L.; Dr. Michele Rosen, a neuropsychological expert retained by Plaintiffs; Mr. James Boyd, a vocational expert retained by Plaintiffs; Ms. Elizabeth Watson, a functional assessment expert retained by Plaintiffs; Ms. Holly Rouser, a speech and language pathologist for the District; Mr. Arnell Brady, a speech and language expert retained by Plaintiffs; Ms. Julie Monahan, the supervisor of the District's expert who performed the AT Evaluation; Mr. Don Dalton, an assistive technology expert retained by Plaintiffs; Ms. Linda Kramer, an occupational therapist retained by Plaintiffs; Ms. Barb Rezabek, an expert audiologist for the District; and Dr. Jeanne Ferre, an expert audiologist retained by Plaintiffs.

During the pendency of the hearing, the "parties agreed that A.L. should be placed at Southside Academy instead of Dunbar." (Def.'s 56.1 Stmnt ¶ 17.) On September 23, 2008, having found that the District's actions deprived A.L. of a free appropriate public education, the Hearing Officer entered a Final Order, which held, in relevant part, as follows:

1. The Student's educational placement shall remain Southside School for the remainder of the 2009-10 school year. Thereafter, she shall continue to attend Southside if the team agrees that Southside is an appropriate placement for AL.

2. AL shall be evaluated to more fully assess her occupational therapy needs. The evaluation shall not be limited to AL's classroom needs, but must assess AL's skills relevant to her vocational needs, as well. To ensure that the evaluation includes the appropriate focus, the Parent may obtain a private evaluation to be conducted at public expense. Since Linda Kramer has provided some initial assessment information and is familiar with AL, it is preferable that Ms. Kramer complete the OT evaluation if she is

available.

3. Within three weeks of this order, the parties shall convene an IEP meeting to develop an IEP for AL that takes this decision and order into account. Specifically, the IEP must include the following: [a] Appropriate, measurable goals for AL that are based on input from team members, including the Parent; [b] Speech and language therapy for at least 60 minutes per week. IEP goals shall take Mr. Brady's findings and recommendations into account; [c] Reading instruction presented through a multisensory approach; [d] A meaningful transition plan that takes into account the findings and recommendations of Mr. Boyd and Ms. Watson. To ensure that an appropriate transition plan is developed for AL, the Parent may invite either Mr. Boyd or Ms. Watson to attend the IEP meeting. The District shall reimburse the Parent's consultant for his or her time; [e] To the extent that the occupational therapy evaluation can be completed in time, the IEP team shall take the evaluator's recommendations into account. Otherwise, the team shall promptly reconvene.

4. The District is required to pay for Mr. Brady's speech and language assessment, Mr. Boyd's and Ms. Watson's functional vocational evaluations, Dr. Rosen's neuropsychological evaluation (including her time spent observing AL in the classroom), and for Ms. Kramer's initial OT assessment. The District shall also pay for Ms. Kulczyk's time spent observing Dunbar's classroom for moderate cognitively impaired students.

5. The District shall reimburse Mr. Boyd, Ms. Watson and Dr. Rosen for their time spent testifying at the hearing, and for Dr. Rosen's participation at the December 11, 2008 IEP meeting.

6. Because creating and implementing an appropriate transition plan for AL is of paramount importance to her education and future success outside of school, the Parent may invite either Mr. Boyd or Ms. Watson to participate in a year-end review for AL. The District shall pay for the consultant's time.

7. As a compensatory service for CPS' failure to adequately assess and provide AL with speech and language therapy, AL shall receive private speech and language therapy at District expense. The therapy shall be provided for one hour per week, before or after school, or on weekends, for a period of one calendar year. The Parent may obtain the services of Mr. Brady or another speech and language therapist included on ISBE's lists of approved therapists. The District shall reimburse the Parent for reasonable transportation costs to and from the provider.

(Hr'g Officer Dec. at 24-25.)

On January 25, 2010, Plaintiffs filed the present action against the District, the ISBE, and ISBE Superintendent Chris Koch, in his official capacity. Plaintiffs' Amended Complaint, filed on October 5, 2010, alleges various violations of 42 U.S.C. § 1983, and the IDEA, 20 U.S.C. § 1401, *et seq*., as well as requests attorney's fees and costs pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B). (Am. Compl. ¶¶ 146-86.) Following Plaintiffs' voluntary dismissal of the ISBE Defendants, the District is the only remaining Defendant. (*See* R. 90.) The parties have filed cross-motions for summary judgment, which are fully briefed. The Court has jurisdiction pursuant to 20 U.S.C. § 1415(e)(2) and 28 U.S.C. § 1331.

## ANALYSIS

Before reaching the merits of the parties' cross-motions, the Court notes that its review is complicated by Plaintiffs' failure to clearly define the nature of this civil action. As the District observes, "[t]he complaint is difficult to decipher, in terms of what is an alleged violation, what is simply recitation of record, and which violations are attributed to which defendnat(s)." (R. 83, Def.'s Mem. of Law in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 7.) Plaintiffs' motion papers in connection with the present cross-motions offer little to clarify the confusion caused by their pleadings, and in many cases, add further confusion by failing to apply the correct legal standard and by pursing claims not pleaded in the Amended Complaint. These deficiencies notwithstanding, the Court now turns to the parties' cross-motions for summary judgment.

# I.    Count I:  42 U.S.C. § 1983

In Count I of the Amended Complaint, Plaintiffs allege that the District "deprived the Plaintiffs of their rights secured under the Fifth and Fourteenth Amendments to the U.S. Constitution, the related sections of the Illinois Constitution, the IDEA and 42 U.S.C. § 1983 by failing to comply fully with the Final Order."  (Am. Compl. ¶ 151.)  For the reasons explained below, the Court grants Defendant's motion, and denies Plaintiffs' motion, for summary judgment on the § 1983 claim.

## A.    Legal Standard and Standard of Review

Section 1983 of Title 42 of the U.S. Code provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983.  Where, as here, the § 1983 defendant is a public entity, the plaintiff must demonstrate both an underlying deprivation of a federal right, and that the deprivation "was caused by an official policy or custom."  *Sow v. Fortville Police Dep't*, 636 F.3d 293, 301 (7th Cir. 2011) (citing *Monell v. New York City Dep't of Social Servs*., 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

The standard for summary judgment on a § 1983 claim is set forth in Rule 56 of the Federal Rules of Civil Procedure.  Under the Rule, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In considering summary judgment motions, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (internal quotation marks and citation omitted).

### B.      Analysis

In this case, the precise nature of Plaintiffs' § 1983 claim against the District is unclear. What is clear, however, is that Plaintiffs make no attempt to plead or otherwise prove that any deprivation of federal rights "was caused by an official policy or custom." *Sow*, 636 F.3d at 301 (affirming district court's grant of summary judgment on a § 1983 claim against a municipality, reasoning, among other things, that the plaintiff "has not shown that a constitutional deprivation was caused by an official policy or custom"). As Defendants point out, Plaintiffs make no such allegation in their Amended Complaint, nor do Plaintiffs attempt to argue as much in connection with the present cross-motions. (R. 93, Pls.' Mem. of Law in Support of Pls.' Mot. for Summ. J. ("Pls.' Mem.") at 3 (stating in conclusory fashion that the right to a free appropriate public education is "enforceable pursuant to [the IDEA, state law,] and 42 U.S.C. § 1983").)

Accordingly, there being no genuine issue of material fact as to the existence, if at all, of an official policy or custom pursuant to which the District violated the IDEA, the Court grants

the District's motion, and denies Plaintiffs' motion, for summary judgment on the § 1983 claim.

## II.     Count II:  Individuals with Disabilities Education Act

In Count II of the Amended Complaint, Plaintiffs present a partial appeal of the Final Order of the Hearing Officer, alleging that the decision of the Hearing Officer denied them their procedural and substantive rights under the IDEA.  (Am. Compl. ¶¶ 176-83.)  For the reasons described below, the Court grants Defendant's motion, and denies Plaintiffs' motion, for summary judgment on the IDEA claim.

### A.     Legal Standard and Standard of Review

The IDEA seeks to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. ___, 129 S. Ct. 2484, 2491-92, 174 L. Ed. 2d 168 (2009); *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of the Commw. of Mass.*, 471 U.S. 359, 367-68, 105 S. Ct. 1996, 85 L. Ed. 2d 38 (1985).  The Act requires school districts receiving federal assistance to establish "policies and procedures to ensure" that disabled children receive a "free appropriate public education," or "FAPE."  *See* 20 U.S.C. § 1412(a)(1)(A); *Todd v. Duneland Sch. Corp.*, 299 F.3d 899, 905 (7th Cir. 2002).

Once a covered school district identifies a disabled student in need of special educational assistance, a "team," including parents, teachers and administrators, must develop an "individualized education program," or "IEP," for the student.  *See* 20 U.S.C. §§ 1412(a)(4), 1414(d).  As the Supreme Court has held, the IEP must "provid[e] personalized instruction with

sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. of the Hendrick Hudson C. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). This means that the IEP "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Id.* at 204. Once a school district creates an IEP, students have a statutory right to file a due process complaint and have that complaint adjudicated before a state administrative tribunal at an "impartial due process hearing." *See* 20 U.S.C. §§ 1415(b)(6), (e)(1), (f)(1).

Any party aggrieved by the state administrative decision may seek review in the district court. *See* 20 U.S.C. § 1415 (i)(2)(A). This Court can review the administrative record for both procedural and substantive compliance with the IDEA. *See Bd. of Educ. of Tp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 279, 283 (7th Cir. 2007).

Once an action under the IDEA is commenced in federal court, summary judgment is the "'procedural vehicle'" to resolve the claim. *Loch v. Edwardsville Sch. Dist. No. 7*, 327 F. Appx. 647, 651 (7th Cir. 2009) (quoting *Heather S. v. State of Wisc.*, 125 F.3d 1045, 1052 (7th Cir. 1997)). Summary judgment in the context of an IDEA case, however, "has a different meaning than it has in a typical Rule 56 motion." *Alex R. ex rel. Beth R. v. Forestville Valley Comm. Unit Sch. Dist. No. 211*, 375 F.3d 603, 611 (7th Cir. 2004). As the Seventh Circuit has explained, a motion for summary judgment under the IDEA "might more accurately have been titled 'motion for judgment under the IDEA.'" *Id.* (citation omitted).

It is well settled that the party challenging the decision below bears the burden of proof in a subsequent federal action. *See, e.g., Marshall Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.*, 616 F.3d 632, 636 (7th Cir. 2010). In considering whether the challenging party has met that

burden, the IDEA requires that the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

Federal courts will not defer to the hearing officer on questions of law, but will give "due weight" to the hearing officer on issues of fact. *Brian D.*, 616 F.3d at 636. If the reviewing court decides the claim based on the administrative record alone, it owes considerable deference to the hearing officer, and may set aside the administrative order only if it is "strongly convinced that the order is erroneous[, a] level of review akin to the standards of clear error or substantial evidence." *Alex R.*, 375 F.3d at 612 (internal quotation marks and citation omitted).

### B. Procedural Compliance with the IDEA

The first question is whether Plaintiffs have met their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity. The IDEA requires any educational agency receiving federal assistance to "establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a). A procedural flaw must be considered within the entirety of the record, and does not, as a matter of law, constitute the denial of a free appropriate public education. *See Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist.*, 507 F.3d 1060, 1065 (7th Cir. 2007). The error must "result in the loss of educational opportunity." *Ross*, 486 F.3d at 276. In this case, Plaintiffs make numerous claims of procedural non-compliance, but, as explained below, Plaintiffs have not satisfied their burden of proving any

violation of their procedural rights under the IDEA that resulted in the loss of educational opportunity.

## 1.    Denial of Participation

In the Amended Complaint, Plaintiffs allege that the "District did not follow the legally required procedures to assist in determining the content of the child's IEP." (Am. Compl. ¶ 45.) Although somewhat unclear, Plaintiffs appear to argue that the District excluded A.L.'s Parent from participation in meetings relating to A.L.'s IEP, in violation of the IDEA. *See* 20 U.S.C. § 1415(b)(1) (mandating that parents be afforded an opportunity to participate in meetings relating to the educational placement of the child).

Plaintiffs made the same argument below, and the Hearing Officer agreed. (*See* Hr'g Officer Dec. at 22 (concluding that the District "committed procedural violations that denied AL's right to FAPE," namely by denying A.L.'s mother the opportunity to "participate in developing AL's IEP").) Recognizing as much, Plaintiffs now complain that the Hearing Officer "provided no remedy for the violation," and ask the Court to "reverse that error." (Pls.' Mot. at 18.) But Plaintiffs fail to explain why they are entitled to further relief, and have therefore failed to satisfy their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity.

It is true, as the Hearing Officer recognized, that the District denied A.L.'s mother the opportunity to "participate in developing AL's IEP," yet the Hearing Officer remedied that violation by ordering the parties to "convene an IEP meeting to develop an IEP for AL that takes this decision and order into account[, specifically by including] [a]ppropriate, measurable goals for AL that are based on input from team members, including the Parent." (Hr'g Officer Dec. at

24.)  In the absence of any argument by Plaintiffs as to why the Hearing Officer's order failed to remedy the procedural violation, or otherwise denied A.L. a free appropriate public education, Plaintiffs have failed to meet their burden on this claim.  *See, e.g.*, *M.O. v. Ind. Dep't of Educ.*, 635 F. Supp. 2d 847, 857 (N.D. Ind. 2009) (collecting cases where "[t]he Seventh Circuit has found that procedural violations involving participating in forming the IEP do not result in a loss of educational opportunity or a free appropriate public education").

### 2.        Violation of Stay-Put Provision

Next, Plaintiffs argue that the Hearing Officer committed "clear error by not finding the District in violation of the procedural safeguards for violation of Stay[-]put."  (Pls.' Mot. at 9.)  The so-called "stay put" provision of the IDEA requires the school district to maintain the student's current educational placement during administrative proceedings, absent the parties' agreement to the contrary.  *See* 20 U.S.C. § 1415(e)(3)(A); 34 C.F.R. § 300.518(a); *John M. v. Bd. of Educ. of Evanston Tp. High Sch. Dist. No. 202*, 502 F.3d 708, 714-15 (7th Cir. 2007).  In this case, Plaintiffs make two arguments that the District violated the stay put requirement, neither of which is availing.

First, Plaintiffs argue that the District violated the stay-put provision by providing "only 3 weeks of Extended School Year ("ESY") in 2008 and only 4 weeks of ESY in 2009," where the IEP required 6 weeks.  (Pls.' Mot. at 8 (citing Pls.' 56.1 Stmnt ¶ 45).)  But, as the District points out, the IEP that activated on January 29, 2008, which defines the educational circumstances that must stay put, required only four weeks of ESY, not six.  (R. 122, Def.'s Resp. to Pls.' Mot. for Summ. J. ("Def.'s Resp.") at 8-10 (citing R. 122, Ex. B at 676).)  This undisputed fact dooms Plaintiffs' argument relating to 2009 because A.L. received exactly what

the IEP required.  As for 2008, although Plaintiffs argue that the District provided only three weeks of ESY, Plaintiffs have not supported this assertion with any record evidence.  The only record citation advanced by Plaintiffs is to the testimony of A.L.'s mother, who stated that A.L. "was enrolled late" in 2008 and attended three weeks of ESY.  This proffered evidence is insufficient to prove that the District failed to offer the required four weeks of ESY, or that the District otherwise prevented A.L. from enrolling in four weeks of ESY.

Second, Plaintiffs argue that the District violated the stay-put provision by not providing A.L. "with an instructional (special education) classroom for all her core classes."  (Pls.' Mem. at 8 (citing Pls.' 56.1 Stmnt ¶ 49).)  Specifically, Plaintiffs contend that the District placed A.L. in regular education classrooms for Spanish and Accounting during the 2008-09 school year, and "reg. ed. Chemistry" for one month.  (Pls.' Mem. at 8.)  As the Hearing Officer found, however, students entering their sophomore year in high school may select a "major," and the evidence shows that A.L., together with her Parent, selected the Accounting and Spanish courses in which she was enrolled.  (Hr'g Officer Dec. at 2; *see also* Def.'s Resp. at 9-10 (citing, *e.g.*, *id.*, Ex. B, Tr. at 784).)  Plaintiffs offer nothing in the record to refute these facts, and therefore have not satisfied their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity.  (*See, e.g.*, R. 125, Pls.' Resp. to Def.'s Mot. for Summ. J. ("Pls.' Resp.") at 20 (arguing, without citation, that "services were not offered").)

### 3.    Improper Delegation

Plaintiffs next argue that the Hearing Officer "illegally delegated the choice of the reading program to be provided as a remedy to the IEP Team."  (Pls.' Mem. at 21; *see also* Am. Compl. ¶ 181.)  Plaintiffs reason that the IDEA restricts district staff "from acting as a [hearing

officer,] where employed by" a district that is a party to the proceeding. (Pls.' Mem. at 21.)

Plaintiffs do not offer any controlling legal authority in support of their argument, and instead rely exclusively on a decision of the United States Court of Appeals for the Sixth Circuit, *Fayette Co., Ky. v. L.M.*, 478 F.3d 307 (6th Cir. 2007). *L.M.*, however, is readily distinguishable from this case. In *L.M.*, the Sixth Circuit held that "neither a hearing officer nor an Appeals Board may delegate to a child's IEP team the power to reduce or terminate a compensatory-education award." *Id.* at 318. In this case, Plaintiffs do not explain how the Hearing Officer delegated to A.L.'s IEP Team the power to reduce or terminate the compensatory award. To the contrary, the order that Plaintiffs appear to challenge simply directs the IEP Team to develop an IEP that includes "[r]eading instruction presented through a multisensory approach," consistent with the Hearing Officer's decision. (Hr'g Officer Dec. at 24.)

In the absence of any legal basis for their claim, Plaintiffs have failed to meet their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity.

### 4. Improper Burden Shifting

In the Amended Complaint, Plaintiffs allege that the Hearing Officer "erred in ruling as to which party carried and met the burden of proof on IEEs; in finding that the Plaintiffs did not prove the District's evaluations were inappropriate; and in finding that the District met its burden of proof in establishing that the auditory proceeding evaluation and assistive technology evaluations were appropriate." (Am. Compl. ¶ 179.)

Plaintiffs are correct, as the District concedes, that the Hearing Officer misstated the burden of proof during the pre-hearing proceedings below. (Hr'g Officer Dec. at 2.) What

Plaintiffs overlook, however, is that the Hearing Officer recognized and corrected her error.  As the Hearing Officer explained in the Final Order:

> From a procedural perspective, [it] bear[s] mentioning [that] I corrected an erroneous ruling that I had made during the pre-hearing conference concerning the parties' burden of proof on the adequacy of evaluations.  Specifically, during the pre-hearing conference I ruled that the District bore the burden of proof to show it had appropriately assessed the Student in each of the four areas specified in the Parent's request for an IEE.
>
> During the hearing, however, I realized that in their resolution session, the Parent had relinquished her request for independent evaluations in assistive technology and speech and language, and instead, had agreed to allow the District to conduct those evaluations.  Thus, to the extent that the Parent intended to assert that CPS' AT and speech evaluations were inadequate, the burden of proof had shifted back to her.  With respect to the remaining evaluations – neuropsychological and functional vocational – the District bore the burden of proof as to the adequacy of its evaluations.

(*Id.*)

Nothing in the record suggests that the Hearing Officer applied an improper burden of proof in adjudicating Plaintiffs' claims.  Indeed, Plaintiffs have altogether failed to offer any record evidence suggesting as much.  Under these circumstances, Plaintiffs have not demonstrated that any procedural inadequacy has resulted in the "in the loss of educational opportunity" such that the Court may grant relief.  *Hjortness*, 507 F.3d at 1068.

### 5.    Failure to Consider Evidence/Extended School Year

In the Amended Complaint, Plaintiffs allege that the Hearing Officer "erred in failing to consider the denial of FAPE due to the District's failure to provide the requisite [ESY] as required in the IEP and as required by the Stay Put mandates."  (Am. Compl. ¶ 183.)  Plaintiffs explain that the Hearing Officer "ignored evidence proving the District failed to implement the IEP as written and specifically failed to offer or provide 6 weeks of ESY during the summer of

2007." (Pls.' Mem. at 7.) Plaintiffs explain that "A.L. was not provided an opportunity for ESY during the summer 2007 . . . because the high school dropped the ball." (*Id.* at 6.)

The only record evidence advanced by Plaintiffs is the testimony of A.L.'s mother, L.L., who stated that "nobody contacted me [about ESY after 8th grade], so I assumed it was not offered." (R. 122, Ex. B, Tr. at 754.) The testimony of A.L.'s mother as to her assumptions about ESY does not prove, by a preponderance of the evidence, that the District failed to offer ESY during the summer of 2007, or that the Hearing Officer committed legal error. Therefore, Plaintiffs have failed to meet their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity.

### 6. Independent Educational Examinations ("IEEs")

Plaintiffs' argue that the Hearing Officer "committed clear error by not finding the District liable for the IEE Request as to the Audiological component of the SL evaluation and the AT evaluation" for two reasons: (1) "the District never filed an IEE Complaint to contest the IEE Request, and the [Hearing Officer] failed to find the District in default or to have waived its right to contest the IEE Request;" and (2) "Plaintiffs' [sic] proved the District's evaluation were not appropriate." (Pls.' Mem. at 10.) Both arguments lack merit.

### a. The District's Failure to File Due Process Complaint

First, Plaintiffs argue that the Hearing Officer erred by failing to find a "violation [by the District]" for failing to provide the requested IEEs, or file a due process complaint, following Plaintiffs' February 1, 2008 request for IEEs, in violation of 34 C.F.R. § 300.518(b). (Pls.' Resp. at 21.) Based on this violation, Plaintiffs argue that the District "waived" its right to litigate the IEE requests before the Hearing Officer, and likewise, the Hearing Officer erred by denying

Plaintiffs' motion for default regarding the District's failure to file due process complaint.

Under the regulations implementing the IDEA, "[i]f a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either [1] [f]ile a due process complaint to request a hearing to show that its evaluation is appropriate; or [2] [e]nsure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria." 34 C.F.R. §§ 300.518.

Here, Plaintiffs have failed to meet their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity. The Hearing Officer found that the parties appeared to have met and reached agreement on certain issues after Plaintiffs made their request for IEEs on February 1, 2008, thereby relieving the District of its obligation to file a due process complaint. (Def.'s Resp., Ex. B at 569-70.) The Hearing Officer nonetheless granted leave to Plaintiffs to argue otherwise, but it does not appear that Plaintiffs did so. (*Id.*) Alternatively, to the extent a procedural violation occurred, Plaintiffs make no argument that the violation was anything more than harmless, or that it otherwise "result[ed] in the loss of educational opportunity," particularly in light of the ultimate relief that Plaintiffs obtained. *Ross*, 486 F.3d at 276.

### b.    Lack of Independence

Second, Plaintiffs argue that the Hearing Officer "made a clear error of law by finding that the District's AT evaluation was an IEE, rather than a typical, non-independent District evaluation." (Pls.' Mem. at 13-14 (citing Administrative Record ("A.R.") at 60).) Plaintiffs explain that neither the AT Evaluation nor the SL Assessment "meets the definition of an IEE,

because the District chose the evaluators rather than being chosen by the Parent and they were administered by its own chosen evaluator rather than the parent's chosen independent evaluators." (Pls.' Mem. at 14 (citing 34 C.F.R. § 300.502; *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005).)

Although Plaintiffs may have a right to an independent examination, 34 C.F.R. § 300.502, the Hearing Officer found that Plaintiffs had effectively waived that right by "agree[ing] to allow the District to conduct those evaluations." (Hr'g Officer Dec. at 3.) The Hearing Officer's factual finding about the parties' agreement, to which the Court owes considerable deference, *see Brian D.*, 616 F.3d at 636, is supported by the record. During an April 11, 2008 resolution conference, the District agreed to an SL Assessment and AT Evaluation for A.L. (Def.'s 56.1 Stmnt ¶ 11.) Thereafter, on April 30, 2008, Plaintiffs filed a motion with the Hearing Officer requesting an order that requires "[t]he District to provide the speech and language evaluations and assistive technology evaluation to be conducted by the District promptly and be provided to the independent evaluator." (A.R. at 62.) The Hearing Officer granted the motion. (Def.'s 56.1 Stmnt ¶ 13.)

Under these circumstances, Plaintiffs have failed to meet their burden of proving a procedural violation of the IDEA that resulted in the loss of educational opportunity.

### 7.    Conclusion

Plaintiffs have failed to carry their burden of proving any procedural violation of the IDEA that resulted in the denial of educational opportunity, and for this reason, Plaintiffs are not

entitled to summary judgment.[3]  Because Plaintiffs "bear the burden of proof on their IDEA

claim[s] and have not met that burden,"the Court grants summary judgment for the District on

Plaintiffs' procedural claims under the IDEA.  *Roy and Anne A. v. Valparaiso Comm. Schools*,

951 F. Supp. 1370, 1374 (N.D. Ind. 1997); *see also Heather S.*, 125 F.3d at 1052 (suggesting that

where the challenging party under the IDEA fails to meet her burden of proof, summary

judgment is proper for the opposing party).

## C.    Substantive Compliance with the IDEA

The Court now turns to whether the District has complied with the substantive

requirements of the IDEA.  Plaintiffs make a number of arguments in this regard, but, as

explained below, Plaintiffs have failed to meet their burden of proving any substantive violation

of the IDEA.

### 1.    Assistive Technology ("AT") Evaluation

Plaintiffs contend that the Hearing Officer erred in concluding that the AT Evaluation,

which the District conducted on February 19, 2009, was appropriate.  (Pls.' Mem. at 15.)

_____

[3]The Court makes two brief observations relating to Plaintiffs' procedural claims.  First, in moving for summary judgment, Plaintiffs additionally appear to argue that the Hearing Officer violated Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution.  The Court declines to consider these apparent claims because the claims are not pleaded in the Amended Complaint, and are therefore not at issue in this case.  *See E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 443 (7th Cir. 2008) (citing the well-settled rule that a plaintiff "may not amend his complaint through arguments in his brief") (internal citations and quotation marks omitted).  Second, Plaintiffs appear to argue that the Hearing Officer denied them their right to cross-examination, and erred in admitting certain documents into evidence. (*See, e.g.*, Pls.' Mem. at 16.)  Plaintiffs do not develop these arguments, or offer any legal or factual citation in support thereof.  Under these circumstances, the Court deems the arguments to be abandoned and/or waived.  *See, e.g.*, *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002) ("Unsupported and undeveloped arguments are considered waived.").

Specifically, Plaintiffs assert that "neither software nor hardware were specified" in the evaluation, and that various witnesses testified to the deficiencies in the AT Evaluation, including Mr. Don Dalton who questioned the effectiveness of the evaluation performed by the District. (*Id.*)

Plaintiffs' argument is largely devoid of legal and factual support, and fails to explain the relevance of any claimed deficiency in the evaluation, or how any such deficiency would deprive the evaluation of all credibility such that it was error for the Hearing Officer to rely on the evaluation. To the contrary, the District points to an abundance of evidence in the record that shows no violation of the IDEA. (Def.'s Mem. at 14-15.)

As the Hearing Officer found, the AT Evaluation identified A.L.'s areas of need, and assessed whether "AT would be useful in minimizing AL's writing deficits, and whether auditory or visual input helped to increase AL's comprehension." (Hr'g Officer Dec. at 21.) The results "indicated that A.L. received no clear benefit from assistive technology," but the District's examiner nonetheless recommended the use of writing and symbol software. (*Id.*; *see also* Def.'s 56.1 Stmnt ¶ 59.) Indeed, the record details the specific recommendations resulting from the Evaluation. (*See* R. 98, Ex. 1, Tr. at 36-43 (specific word processing software with pictures and text, portable spell checker).) As the Hearing Officer further found, "the report of [the District's] evaluation indicates that [the examiner] took care to identify [A.L.'s] areas of need prior to conducting the assessment. She then assessed whether AT would be useful in minimizing AL's writing deficits, and whether auditory or visual input helped to increase AL's comprehension." (Hr'g Officer Dec. at 21.)

Plaintiffs did present their own expert, Mr. Dalton, but he conceded that he had not examined A.L. (Def.'s Mem. at 14 (citation omitted); *see also* Hr'g Officer Dec. at 17 ("Mr. Dalton made it clear that he did not conduct his own evaluation of AL and could not offer an opinion about which AT products would be appropriate for AL – if any.").) Furthermore, the Hearing Officer credited the District's expert over Mr. Dalton (*id.* at 21 ("[Mr. Dalton's] testimony questioning aspects of the District's AT report failed to discredit the [District's] evaluation"), and Plaintiffs provide no sufficient basis for casting aside the Hearing Officer's credibility determination, particularly in light of the Hearing Officer's physical presence during the experts' testimony at trial. *See Beth B. v. Van Clay*, 211 F. Supp. 2d 1020, 1028 n. 2 (N.D. Ill. 2001) (noting that courts "give great deference to the [Hearing Officer's] credibility determinations").

Accordingly, under these circumstances, Plaintiffs have failed to meet their burden of proving a substantive violation of the IDEA arising out of the District's AT Evaluation.

### 2.     Audiological Evaluation

Plaintiffs next contend that the Hearing Officer erred in crediting the testimony of the District's expert, Barb Rezabek, a certified educational audiologist with over two decades of experience. (Hr'g Officer Dec. at 18 ("I found her testimony to be reliable and credible.").) Plaintiffs take no issue with the data contained in the District's audiological evaluation, but rather contend that "the District evaluator misinterpreted her own data, yielding an invalid evaluation and a misdiagnosis of the Student's audiological processing status." (*Id.* at 15, 17.)

The Hearing Officer expressly found that the District's expert's testimony was "reliable and credible," and that Plaintiffs' expert's testimony was not persuasive. (*Id.* at 18.) Plaintiffs

argue that this finding was in error, but point to no "objective factors or fundamental implausibilities" upon which the Court might reject the credibility determinations of the Hearing Officer, who was physically present during the testimony.  *See, e.g.*, *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005).  Nor do Plaintiffs offer any evidence to suggest that the testimony from their expert was sufficiently powerful to destroy the credibility of the opposing expert.  *See, e.g.*, *Morisch v. United States*, 653 F.3d 522, 529 (7th Cir. 2011) (noting that, in a "case if dueling experts," the weight accorded expert testimony is best left to the trial court). Plaintiffs in fact make no argument about how the Hearing Officer's credibility determination at trial violated their rights under the IDEA.

Accordingly, Plaintiffs have failed to meet their burden of proving a substantive violation of the IDEA arising out of the Hearing Officer's reliance on Mr. Rezabek's interpretation of the evaluation data.

### 3.    Content of the "Some Programs/Services" in the IEP

Plaintiffs further assert that the Hearing Officer erred "in finding [that] some programs/services [contained in the IEP were] appropriate." (Pls.' Mem. at 18.)  The central inquiry here is whether the IEP was "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. 176, 203-04.

In moving for summary judgment on the basis that the IEP was inadequate, Plaintiffs offer only the following largely unsupported conclusions:  (1) "[t]he goals and benchmarks [apparently of the IEP] were poorly written," (2) "the IEPs vague [sic] and legally inadequate, the evidence proved that they did not lead to meaningful progress for the student"; (3) "the District did not actually calculate anything in the IEPs which were not internally consistent,

revealing a lack of rational calculation; their placements were for administrative convenience, and not calculated to achieve any clear educational result for the student, and (4) "the District's IEP was not individualized to the Student's unique needs;" and (5) "the district failed to make key judgments on educational policy and methodology entirely in some instances, and simply without regard to the Students's individual needs in other instances." (Pls.' Mem. at 19-22.)

Plaintiffs have not sought to prove these assertions. Not only do Plaintiffs fail to elucidate the precise "programs/services" that they claim to be inappropriate, but Plaintiffs altogether fail to develop or support of any their conclusions listed above. Perhaps most significantly, the Hearing Officer actually granted relief to Plaintiffs on their claim that the IEP was inadequate, and ordered that "the parties shall convene an IEP meeting to develop an IEP for AL that takes this decision and order into account." (Hr'g Officer Dec. at 24.)

Accordingly, Plaintiffs have failed to meet their burden of proving that the content of the IEP was not "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204.

### 4. Conclusion

Plaintiffs have failed to carry their burden of proving any violation of their substantive rights under the IDEA. Similar to the disposition of the procedural claims, because Plaintiffs "bear the burden on their IDEA [substantive] claim[s] and have not met that burden," the Court grants summary judgment for the District. *Roy and Anne A.*, 951 F. Supp. at 1374; *see also Heather S.*, 125 F.3d at 1052.

## CONCLUSION

For the reasons set forth above, the Court grants the District's motion, and denies

Plaintiffs' motion, for summary judgement on Plaintiffs' § 1983 and IDEA claims.


**Date:**  November 18, 2011

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**