# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 494 | **DATE** | 7/24/2012 |
| **CASE TITLE** | A.L. et al vs. Chicago Public School District #299 | | |

**DOCKET ENTRY TEXT**

Plaintiffs' motion for attorney's fees and costs [151] is granted in the amount of $82,544.32. Defendant shall transmit this amount to Plaintiffs' counsel by 9/24/12.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

Before the Court is Plaintiffs' Motion for Attorney Fees and Costs pursuant to the Individuals with Disabilities Education Act ("IDEA"). (R. 151.) As described below, the motion is granted in the amount of $82,544.32.

## BACKGROUND

In February of 2008, Plaintiffs filed a due process complaint against Defendant, alleging and seeking to remedy various violations of A.L.'s right to a "free appropriate public education," or "FAPE." Following numerous evaluations of A.L., a Hearing Officer conducted a four-day administrative hearing on July 21-23 and September 14, 2009. On September 23, 2009, the Hearing Officer found that Defendant's actions deprived A.L. of a free appropriate public education, and entered Final Order granting certain relief. On January 25, 2010, Plaintiffs filed the present action against Defendant, alleging various violations of federal law, as well as requesting attorney's fees and costs pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B). (Am. Compl. ¶¶ 146-86.) On November 18, 2011, the Court granted summary judgment for Defendant on Plaintiffs' federal claims, but reserved decision on Plaintiffs' claim for attorney's fees. (R. 132, 134.) Plaintiffs have since filed a fee petition, which is now fully briefed.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

**LEGAL STANDARD**

The prevailing party in a state administrative proceeding within the meaning of the IDEA may recover reasonable attorney's fees. *See* 20 U.S.C. § 1415(i)(3)(B) ("the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability"); *Schaffer v. Weast*, 546 U.S. 49, 54, 126 S. Ct. 528, 532-33, 163 L. Ed. 2d 387 (2005); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) ("the IDEA does allow fees to the prevailing party in administrative hearings"). The principles governing a fee award under the IDEA are the same as those applicable to civil rights cases under 42 U.S.C. § 1988. *See Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 n.2 (7th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

To determine a reasonable fee, the Seventh Circuit instructs district courts to use the lodestar method, namely to multiply the "number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Pickett v. Sheridan Health Care Cent.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley*, 461 U.S. at 433). This method "applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement." *Pickett*, 664 F.3d at 639. After arriving at the lodestar figure, "other considerations . . . may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. If a "plaintiff prevails on only some of his interrelated claims, . . . . the 'district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'" *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436-37); *see also LaSalvia v. City of Evanston*, No. 10 C 3076, 2012 WL 2502703, at *5 (N.D. Ill. June 28, 2012) (reducing lodestar by 50% based on counsel's limited success).

**ANALYSIS**

Here, Plaintiffs seek to recover $132,020.00 in fees, together with pre-judgment interest at a rate of 3.25%, for the work performed by Attorneys Sheri Bianchin and Joseph Thomas and their respective paralegals, Brad Bradley and Jean Kulczuk. Plaintiffs also seek to recover $2,130.69 in costs. According to Plaintiffs' Exhibit 6 (Corrected), filed at Docket No. 160, Plaintiffs compute their requested fees as follows:

|  | State Administrative Proceedings | | | Federal Fee Litigation | | |
|---|---|---|---|---|---|---|
|  | **Hours** | **Hourly Rate** | **Amount** | **Hours** | **Hourly Rate** | **Amount** |
| Attorney Bianchin | 213.80 | $300.00 | $64,140.00 | 52.20 | $300.00 | $15,660.00 |
| Attorney Bianchin (Travel) | 10.20 | $150.00 | $1,530.00 | 10.00 | $150.00 | $1,500.00 |
| Attorney Thomas | 113.90 | $275.00 | $31,322.50 | 8.80 | $300.00 | $2,640.00 |
|  |  |  |  | 19.70 | $275.00 | $5,417.50 |
| Attorney Thomas (Travel) | 18.80 | $137.50 | $2,585.00 | 12.00 | $137.50 | $1,650.00 |
| Paralegal Bradley | 39.75 | $100.00 | $3,975.00 | 2.50 | $100.00 | $250.00 |
| Paralegal Kulczyk | 13.50 | $100.00 | $1,350.00 | -- | -- | -- |
| **Sub-Total** |  |  | $104,902.50 |  |  | $27,117.50 |
| **Total** | $132,020.00 |  |  |  |  |  |

I.  **State Administrative Proceedings/Lodestar Calculation**

The Court first considers the reasonableness of Plaintiffs' request for fees in connection with the underlying state administrative proceedings. (R. 160, Ex. 6 (Corrected).) Consistent with *Hensley*, the Court will calculate the lodestar amount, with reference to Defendant's specific objections, and then determine whether that figure is appropriate in this case.[1] *See Hensley*, 461 U.S. at 434; *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012).

   A.  **Attorneys Bianchin and Thomas**

Plaintiffs seek $65,670.00 for Attorney Bianchin's work, and $33,907.50 for Attorney Thomas' work, in connection with the state administrative proceedings. Defendant objects to both of these requests on the same ground: each request is "excessive and duplicitive within [the attorney's] own timesheet, as well as compared to the time and work records submitted by [the other attorney]." (R. 168, Def.'s Resp. at 7, 8.) As to each attorney, Defendant sets forth a table listing the specific time entries to which Defendant objects. These table listings, however, often mischaracterize each attorney's actual time sheets, as reflected in Docket No. 152-3.[2] Indeed, Defendant frequently combines time entries and modifies or truncates task descriptions, without any acknowledgment of having done so. Defendant's presentation and boilerplate objections frustrates the Court's review and dooms many of Defendant's objections. That said, having reviewed the record, and considering the parties' briefs, the Court reduces Attorney Bianchin's compensable time by three hours,[3] and makes no adjustment to Attorney Thomas' time.[4]

   B.  **Paralegals Bradley and Kulczuk**

Plaintiffs request $3,975.00 for 39.75 hours of work that Paralegal Bradley performed, and $1,350.00 for 13.50 hours of work that Paralegal Kulczuk performed, in connection with the state administrative proceedings. (R. 160, Ex. 6 (Corrected).) Defendant objects to both of these requests. As to Paralegal Bradley, Defendant argues that certain entries from July 15 to 20, 2009, totaling 36 hours, reflect "the same task – preparing a hearing notebook and making copies of it," and that this time is "unreasonable and excessive." (R. 168, Def.'s Resp. at 6-

---

[1] Defendant does not challenge the requested hourly rates for Attorneys Bianchin ($300) and Thomas ($275.00/$300.00), and Paralegals Bradley ($100.00) and Kulczuk ($100.00). *Accord Ryan M. v. Bd. of Educ. of the City of Chi., Dist. 299*, 731 F. Supp. 2d 776, 789 (N.D. Ill. 2010). The Court accordingly adopts these rates without objection.

[2] Additionally, Defendant includes at least one entry that Attorney Bianchin has removed. (*See* R. 152-3 (4/4/08 entry for hiring legal assistant; not seeking fees).)

[3] This includes a two hour reduction, as unreasonable and inefficient, for time spent having the "legal assistant . . . inform lead attorney (me) about facts and formation of legal issues" (R. 152-3 at 2 (entry 17)), and a one hour reduction, as unreasonable and over-inclusive, on account of approximately 60 entries of .1 hour, often relating to email correspondence.

[4] To the extent Defendant argues that, as a general matter, Attorney Thomas' time on his closing statement was unreasonable, Defendant offers no support or discussion of the record to support that argument. (R. 165, Def.'s Resp. at 7-10.) Defendant's objection is therefore overruled.

7.) Defendant does not discuss why, with reference to the circumstances of this case or the record, Paralegal Bradley's time spent in preparation for the hearing is unreasonable. Defendant's objection is thus overruled. *See Ryan M. v. Board of Educ. of City of Chi., Dist. 299*, 731 F. Supp. 2d 776, 790 (N.D. Ill. 2010) (citing, inter alia, *Jessica P. v. Bd. of Educ. of City of Chi., Dist.* 299, 06 C 0002, 2006 WL 1005356, at *3 (N.D. Ill. Apr. 13, 2006) (overruling objection where Board provided no supporting evidence and the plaintiffs provided adequate explanation for the time involved)).

With regard to Paralegal Kulczuk, Defendant objects to the following time entries as "not sufficiently descriptive," "vague," duplicitive of attorney work, and otherwise unreasonable:

| Date | Hours | Description |
|---|---|---|
| 4/7/08 | 4.00 | "Educate attorney re history, facts and issues." |
| 11/10/09 | 3.00 | "Prepare comments for IEP meeting." |
| 10/19/10 | 2.50 | "Review file and offer opinion and recommendation or advice for IEP meeting." |
| 10/23/10 | 1.50 | "Review IEP and Prepare Comments" |

(R. 168, Def.'s Resp. at 6.) The Court largely agrees. The entries are generally vague and appear to include legal work that a paralegal would not be qualified to perform. In the exercise of its discretion, the Court reduces Paralegal Kulczuk's compensable time by four hours.

**C.     Lodestar Calculation**

Based on the discussion above, the Court arrives at a lodestar amount of $103,602.50, calculated as follows:

| Individual | Requested Hours | Awarded Hours | Hourly Rate | Amount |
|---|---|---|---|---|
| Attorney Bianchin | 213.80 | 210.80 | $300.00 | $63,240.00 |
| Attorney Bianchin (Travel) | 10.20 | 10.20 | $150.00 | $1,530.00 |
| Attorney Thomas | 113.90 | 113.90 | $275.00 | $31,322.50 |
| Attorney Thomas (Travel) | 18.80 | 18.80 | $137.50 | $2,585.00 |
| Paralegal Bradley | 39.75 | 39.75 | $100.00 | $3,975.00 |
| Paralegal Kulczyk | 13.50 | 9.50 | $100.00 | $950.00 |
| **Total**[5] | | | | $103,602.50 |

---

[5] Defendant does not object to the amounts requested on account of travel time, and the Court therefore awards these amounts without objection.

### D.  Adjustment of Lodestar Under *Hensley*

The calculation of the lodestar does not end the inquiry. *See Hensley*, 461 U.S. at 434; *Johnson*, 668 F.3d at 929. Where, as here, "a plaintiff prevails on only some of his interrelated claims, . . . the district court . . . may simply reduce the [lodestar amount] to account for limited success." *Sottoriva*, 617 F.3d at 975-77 (stating that because "[p]recision is impossible . . . the district court is entitled to considerable discretion in arriving at" a reasonable award). "[T]he critical inquiry" is whether the "fee award is reasonable in relation to the results [plaintiff] actually obtained." *Id.* at 975.

Here, Defendant argues that Plaintiffs only obtained limited success on the merits, warranting a 68% reduction of the lodestar amount. In the underlying state administrative proceeding, Plaintiffs filed a due process complaint seeking a finding that:

> [1] the District did not comply with the stay-put requirement imposed for AL; [2] the District violated and continues to violate the procedural rights of A.L. and her parent by denying them participation in the formulation of [free appropriate public education [("FAPE")]; [3] the District denied and continues to deny A.L. a [FAPE] and her entitled educational opportunities including extended year services; [and 4] the District's [Individualized Educational Plans ("EIPs")] were inappropriate and continue to be as to their lack of specially designed instruction responsive to the Student's unique needs & inappropriate as to their lack of related services required for the Student to benefit from her special education[.]

(R. 151-1, Admin. Decision at 4-5.) Additionally, Plaintiffs sought an order requiring Defendant to:

> [1] provide A.L. with a FAPE as documented in an appropriate IEP that is reasonably calculated to confer an educational benefit as soon as allowed by law; [2] provide Speech & Language and other appropriate related services for A.L. to address her speech and language, auditory processing deficits and other deficits so that A.L. will benefit from her education; [3] undertake the appropriate assistive technology for A.L. in order for A.L. to benefit from her education; [4] [pay] compensation for outside evaluations paid for by AL's family; [5] adopt an appropriate transition plan with services to meet the needs of A.L. in accordance with the functional vocational evaluations conducted; [6] provide an appropriate placement for A.L. and . . . provide transportation to and from the placement; [7] [provide] compensatory education to make A.L. whole for the period of deprivation of educational opportunity, and for the lack of specially designed instruction, at an appropriate educational facility selected by the Parent at times of their own choosing and convenience; [8] pay for reasonable transportation costs to and from these providers to obtain such compensatory education; and [9] provide monthly reports on implementation of the order for 12 months to the Parent, her counsel and [the Illinois State Board of Education [("ISBE")].

(*Id.*)

On September 23, 2009, following a hearing, a Hearing Officer issued a Final Order concluding that some of Defendant's actions deprived A.L. of a free appropriate public education. First, as to appropriate testing, the Hearing Officer concluded that Defendant failed to properly evaluate A.L. as to three categories,[6] but did properly

---

[6](*See* R. 151-1, Admin. Decision at 20 (functional vocational), 20-21 (speech and language), 21 (occupational therapy).)

evaluate her as to two other categories.[7] Second, as to procedural violations, the Hearing Officer concluded that Defendant committed numerous such violations, including preventing A.L.'s parent from participating in the formation of the IEP and failing to implement the IEP as written. (*Id.* at 21-22.) The Hearing Officer found no merit to Plaintiffs' other assignments of procedural error, including Defendant's alleged delay in providing the IEP to Plaintiffs and violation of the "stay-put mandates." (*Id.*) Third, the Hearing Officer concluded that Defendant failed to develop an appropriate IEP for A.L., but that Defendant adequately addressed A.L.'s regression. (*Id.* at 23.)

> On account of these violations, the Hearing Officer ordered, in relevant part, as follows:
>
> A.L. shall be evaluated to more fully assess her occupational therapy needs. The evaluation shall not be limited to AL's classroom needs, but must assess A.L.'s skills relevant to her vocational needs, as well. To ensure that the evaluation includes the appropriate focus, the Parent may obtain a private evaluation to be conducted at public expense. Since Linda Kramer has provided some initial assessment information and is familiar with A.L., it is preferable that Ms. Kramer complete the OT evaluation if she is available.
>
> [T]he parties shall convene an IEP meeting to develop an IEP for A.L. that takes this decision and order into account. Specifically, the IEP must include the following: [a] Appropriate, measurable goals for A.L. that are based on input from team members, including the Parent; [b] Speech and language therapy for at least 60 minutes per week. IEP goals shall take Mr. Brady's findings and recommendations into account; [c] Reading instruction presented through a multisensory approach; [d] A meaningful transition plan that takes into account the findings and recommendations of Mr. Boyd and Ms. Watson. . . .
>
> The District is required to pay for Mr. Brady's speech and language assessment, Mr. Boyd's and Ms. Watson's functional vocational evaluations, Dr. Rosen's neuropsychological evaluation (including her time spent observing A.L. in the classroom), and for Ms. Kramer's initial OT assessment. The District shall also pay for Ms. Kulczyk's time spent observing Dunbar's classroom for moderate cognitively impaired students.
>
> The District shall reimburse Mr. Boyd, Ms. Watson and Dr. Rosen for their time spent testifying at the hearing, and for Dr. Rosen's participation at the December 11, 2008 IEP meeting.
>
> [T]he Parent may invite either Mr. Boyd or Ms. Watson to participate in a year-end review for AL. The District shall pay for the consultant's time.
>
> . . . A.L. shall receive private speech and language therapy at District expense. . . . The District shall reimburse the Parent for reasonable transportation costs to and from the provider.

(*Id*. at 24-25.)

Based on a review of the administrative record, it appears that Defendant's request for a 68% reduction in fees is too extreme. Although Plaintiffs did not obtain complete success, neither was their success as limited as Defendant contends. Defendant advances no argument to support its request for a 68% reduction, but instead appears to tally up the number of issues upon which Plaintiffs prevailed, and those that Plaintiffs did not, to arrive at a suggested reduction. Not only has the Seventh Circuit rejected this type of analysis, but Defendant fails to

---

[7](*See* R. 151-1, Admin. Decision at 19 (cognitive), 21 (assistive technology).)

discuss the weight to be accorded any specific issue. *See Sottoriva*, 617 F.3d at 976.

With this in mind, and in light of the record, the Court exercises its discretion to reduce the lodestar amount by 25% on account of Plaintiffs' limited success. Applying a 25% reduction to the lodestar amount of $103,602.50, the Court arrives at a fee award of $77,701.88, which is reasonable under the particular circumstances of this case. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1676, 176 L. Ed. 2d 494 (2010) ("Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge.") (quoting 42 U.S.C. § 1988); *Broaddus v. Shields*, 665 F.3d 846, 858 (7th Cir. 2011).

## II.    Federal Fee Litigation

Plaintiffs seek $27,117.50 in attorney's fees in connection with the present federal fee litigation. The Court exercises its discretion to reduce this amount by 90%, for an award of $2,711.75.

Plaintiffs' counsel lifted verbatim large portions of Plaintiffs' briefs directly from judicial decisions, without appropriate attribution. Indeed, more than half of Plaintiffs' memorandum of law comes directly from *Brianna O. v. Bd. of Educ. of the City of Chi, Dist. 299,* No. 10 C 2132, 2010 WL 4628749 (N.D. Ill. Nov. 8, 2010) and *John M. v. Bd. of Educ. of the City of Chi., Dist. 299*, 612 F. Supp. 2d 981 (N.D. Ill. 2009). (*See, e.g.*, R. 154, Pls.' Mot. §§ III(A)-(B), IV(B)(ii)(a)-(h), (D)-(E); V (intro), (C); page 14-15 ("Prejudgment Interest Due").)  Large portions of Plaintiffs' reply similarly include verbatim text, without proper attribution, from judicial opinions, including *Brianna O*, cited *supra*; *Bd. of Educ. of the City of Chi., Dis. 299 v. Walker*, 800 F. Supp. 2d 917, 925 (N.D. Ill. 2011); *Christopher C. v. Bd. of Educ. of the City of Chi., Dist. 299*, No. 10 C 821, 2010 WL 3420266, at *3 (N.D. Ill. Aug. 26, 2010); and *M. v. City of Chi. Bd. of Educ., Dist. 299,* No. 10 C 2110, 2010 WL 4639259, at *1 (N.D. Ill. Nov. 8, 2012). (*See, e.g.*, R. 172, Pls.' Rep. at 10-11 & n. 2, 3, 4, 7, 9, 10, 13, 14, 18, 19, 22, 23.)

Not only does Plaintiffs' counsel lift the legal standards set forth in these decisions, but counsel additionally presents unaltered case specific analysis from those cases without attribution, including application of law to fact and distinguishing of authority. (*See, e.g.*, R. 154, Pls.' Mot. at 2-4, 7 (copying a discussion from a judicial opinion about why a certain case is "readily distinguishable" from this case), 8-15.)

Many courts have condemned the practice of "cutting and pasting" from judicial opinions without appropriate attribution, and Plaintiffs' counsel's conduct here, unfortunately, requires this Court to do the same. *See United States v. Bowen*, 194 Fed. App'x 393, 402 n.3 (6th Cir. 2006) ("unacceptable"); *Lavanture*, 74 Fed. App'x at 223 n.2 ("strong disfavor"); *United States v. Jackson*, 64 F.3d 1213, 1219 n.2 (8th Cir. 1995) (expressing "disapproval of a style of brief-writing that appropriates both arguments and language without acknowledging their source"); *Venesevich v. Leonard*, 07-CV-2118, 2008 WL 5340162, at *2 n.2 (M.D. Pa. 2008) ("disappointed and disturbed"; "improper"; "professional misconduct"); *Pagan Velez v. Laboy Avarado*, 145 F. Supp. 2d 146, 160 (D.P.R. 2001) ("reprehensible"); *In re Burghoff*, 374 B.R. 681, 684-86 (D. Iowa Bankr. 2007) ("ethical shortcoming") (citing *Frith v. State*, 263 Ind. 100, 325 N.E.2d 186, 188 (1975) ("not . . . helpful to the either a lawyer's client or to the Court")). *Cf. In re Lamberis*, 93 Ill.2d 222, 66 Ill. Dec. 623, 443 N.E.2d 549 (1982) (holding that attorney committed professional misconduct by submitted academic papers that "incorporated, substantially verbatim" existing literature without citation). Counsel's conduct should not be rewarded, and the Court exercises its discretion to reduce Plaintiff's request for fees in connection by the federal litigation by 90%. *Accord United States v. Lavanture*, 74 Fed. App'x, 221, 223 n.2 (3d Cir. 2003) (observing under similar circumstances that counsel "ill-represents his client's interests" by "cut and past[ing]" from judicial opinions without attribution, and stating two reasons for the court's "strong disfavor of the practice": "First, it is certainly misleading and quite possibly plagiarism to quote at length a judicial opinion (or, for that matter, any source) without clear attribution . . . . Second, by simply reprinting the [judicial] work out of its original context,

certain statements in [counsel's] brief are inaccurate.")

Accordingly, the Court awards Plaintiffs 10% of their requested fees, or $2,711.75, in connection with the federal fee litigation.

### III.   Pre-Judgement Interest

The Court denies Plaintiffs' request for pre-judgment interest.  Plaintiffs' entire discussion of the issue in Plaintiffs' legal memorandum was lifted verbatim from *Brianna O.*  (*See* R. 154, Pls.' Mot. at 14-15 ("Prejudgment Interest Due").)  Plaintiffs do not cite to *Brianna O.* in their discussion or pre-judgment interest, nor do Plaintiffs' make any attempt to apply the law of pre-judgment interest to this case.

### IV.   Costs

Plaintiffs request costs in the amount of $2,130.69.  Defendant does not object. Accordingly, the Court awards Plaintiffs their requested costs without objection.

## CONCLUSION

Plaintiffs' petition for attorney's fees is granted in the amount of $82,544.32.  Defendant shall transmit this amount to Plaintiffs' counsel by September 24, 2012.